OPINION
{¶ 1} This case presents the question of who is responsible for the care and maintenance of a cemetery.
 {¶ 2} Wesleyan Cemetery of Cincinnati ("Wesleyan"), an Ohio nonprofit corporation affiliated with the Methodist Episcopal Church, was incorporated by an act of the General Assembly in 1843. Wesleyan was a charitable trust whose corporate officers also acted as its trustees.
 {¶ 3} In 1989, Wesleyan's board of directors amended the existing articles of incorporation and formed a new corporation that was no longer affiliated with the Methodist Episcopal Church. In 1995, Robert Merkle became president of the corporation and created a new board of directors that consisted of his family members.
 {¶ 4} Over the next few years, Merkle used the assets in Wesleyan's endowment-care fund for his personal expenses, and he allowed the cemetery grounds to fall into disarray. According to the trial court, Wesleyan had become a 25-acre eyesore where graves were desecrated and criminal activity was rampant. As a result of Merkle's conduct, he was convicted of theft of the endowment funds and was sentenced to prison.
 {¶ 5} Meanwhile, volunteers had stepped in to maintain the cemetery grounds. And in February 2004, Jim Petro, the Ohio Attorney General, instituted this action against Wesleyan's officers, the city of Cincinnati, and Hamilton County. The attorney general sought restitution, the removal of Wesleyan's trustees, and other declaratory and injunctive relief.
 {¶ 6} In March 2005, the parties entered into a settlement agreement whereby Wesleyan's officers agreed to initiate dissolution of the cemetery association. And the attorney general amended his complaint to add, among other claims, a claim seeking a declaration of the parties' legal status under Ohio's cemetery laws. *Page 3 
 {¶ 7} The trial court dismissed all the defendants but the city from the action and declared that, pursuant to R.C. 759.08, title to the cemetery was vested in the city. The city now appeals.
 Is the State a "Person"? {¶ 8} In its first assignment of error, the city argues that the trial court erred in denying the city's motion to dismiss the action. The city argues that the attorney general did not have standing to bring the action in the first instance because the state was not a person for purposes of declaratory judgment, and because the state was not the real party in interest in the action.
 {¶ 9} In addition, the city claims that the court should have dismissed the declaratory-judgment action because the attorney general failed to name as parties the relatives of those buried at Wesleyan or those who owned burial plots there.
 {¶ 10} R.C. Chapter 2721, Ohio's declaratory-judgment act, authorizes any person affected by a statute to obtain a declaration of rights, status, or other legal relations under the statute.[1] In an action in which declaratory relief is sought under R.C. Chapter 2721, any person who has or who claims any interest that would be affected by the declaration must be made a party to the action or proceeding.[2] A "person" is defined under the chapter as "any person, partnership, joint-stock company, unincorporated association, society, municipal corporation, or other corporation. "[3]
 {¶ 11} The attorney general is beyond dispute a "person" as defined under R.C. Chapter 2721. Here, the attorney general sought a declaration of the parties' legal status under R.C. 759.08, a provision of Ohio's cemetery laws, arguing that the charitable trust that had the responsibility of maintaining the cemetery had abdicated its fiduciary duty. *Page 4 
 {¶ 12} The attorney general is specifically authorized to investigate the actions of the trustees of a charitable trust to determine whether the property held for charitable purposes has been properly administered in accordance with fiduciary principles.[4]
 {¶ 13} And the attorney general is vested with discretion to institute an action to enforce the performance of, or to restrain the abuse of, any charitable trust.[5] The attorney general may bring such an action in his own name, on behalf of the state, or in the name of a beneficiary of the trust.[6]
 {¶ 14} Consequently, the attorney general, as the enforcer of charitable trusts, was uniquely empowered in this case to institute a proceeding involving Wesleyan and to bring the action in his own name or in the name of the state.
 Indispensable Parties {¶ 15} Moreover, contrary to the city's contention, the attorney general did not fail to name any indispensable parties in the action. The essence of a charitable trust "lies in the indefiniteness of the charitable trust beneficiaries," so the attorney general has no duty to attempt to further define other beneficiaries of a charitable trust[7]
Instead, the attorney general himself must represent the class of indefinite beneficiaries of the charitable trust in a declaratory-judgment action.[8]
 {¶ 16} In this case, there was no requirement that the attorney general name all plot holders or relatives of the deceased. The attorney general had properly joined all necessary parties in the action because he represented the trust's beneficiaries.[9]
 {¶ 17} Accordingly, we hold that the trial court properly denied the city's motion to dismiss the action. The first assignment of error is overruled. *Page 5 
 If Not the City of Cincinnati, Then Who? {¶ 18} In its second assignment of error, the city argues that the trial court erred by declaring that the title to Wesleyan vested in the city pursuant to R.C 759.08. The city contends that the court's factual findings were flawed, and that the resulting declaration was therefore erroneous.
 {¶ 19} Our review of the trial court's factual determinations is highly deferential.[10] We will not reverse a judgment on the manifest weight of the evidence if there is some competent, credible evidence going to all the essential elements of the case.[11]
 {¶ 20} The statute at issue in this case, R.C. 759.08, provides the following: "The title to and right of possession of public cemeteries and burial grounds located within a municipal corporation and set apart and dedicated as public cemeteries or burial grounds, and grounds used as such by the public but not dedicated, except those owned or under the care of a religious or benevolent society, or an incorporated company or association, are hereby vested in the municipal corporation in which such cemetery or burial ground is located."
 {¶ 21} The law codified in R.C. 759.08 has been in existence in Ohio since at least 1869.[12] Evidently, the General Assembly anticipated a quandary such as the one presented in this case. But few cases have discussed the application of R.C. 759.08 or its predecessor statutes.[13]
 {¶ 22} In Ravenna Township Trustees v. Ravenna,[14] the Eleventh Appellate District held that under R.C. 759.08, when a city annexed land that completely surrounded a public cemetery, title to and right of possession of the cemetery vested in the city. *Page 6 
 {¶ 23} In this case, the city argues that Ravenna is distinguishable because, unlike the cemetery in Ravenna, the cemetery operated by Wesleyan was not a public cemetery. Instead, the city contends, the cemetery operated by Wesleyan was a private one that was not subject to R.C. 759.08.
 {¶ 24} By its terms, R.C. 759.08 applies to public cemeteries, whether dedicated as such or not. If a cemetery is not dedicated as a public cemetery, but is used as such by the public, title to the cemetery is vested in the municipal corporation in which the cemetery is located, unless it is owned by or under the care of "a religious or benevolent society, or an incorporated company or association."
 {¶ 25} Here, the trial court determined that Wesleyan was a public cemetery, that it was not owned or under the care of a religious or benevolent society, and that it was no longer owned by or under the care of a corporation. The court determined that Wesleyan had been abandoned, that its trustees had resigned, and that no corporate assets or corporate entity remained.
 {¶ 26} These findings were amply supported by the record. Testimony at trial indicated that Wesleyan had been open to the public, and that any member of the public could purchase burial lots or graves at Wesleyan.
 {¶ 27} Moreover, in the 2005 settlement agreement executed by the city and the other parties, the parties stipulated that Wesleyan's officers and trustees had failed to maintain the cemetery, and that, as a result, the cemetery grounds were in disarray and had become a place for criminal activity. And the parties recognized the necessity of "a final resolution regarding the future management of Wesleyan."
 {¶ 28} Under the agreement, Wesleyan's corporate entity was to be dissolved and its assets relinquished. The city, state, and county agreed to discharge from liability Wesleyan's corporate officers and any of its related corporate entities. *Page 7 
 {¶ 29} During our review of this matter, we found ourselves asking, "If not the city, then who?" Eighteen thousand people have been buried at Wesleyan. The cemetery's "trustees" abandoned Wesleyan, leaving the cemetery's daunting maintenance tasks to volunteers from the ranks of relatives and friends of the deceased. The city suggests that these volunteers should "take ownership of their cemetery." We find the city's suggestion to be disingenuous at best.
 {¶ 30} The trial court's determination that Wesleyan was a public cemetery not owned or under the care of a corporation was supported by competent, credible evidence. Accordingly, we hold that the court properly concluded that, pursuant to R.C. 759.08, title to Wesleyan was vested in the city. The second assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed. SUNDERMANN, J., concurs.
PAINTER, P.J., concurs separately.
[1] R.C. 2721.03.
[2] R.C. 2721.12(A).
[3] R.C. 2721.01.
[4] R.C. 109.23 and 109.24.
[5] R.C. 109.24.
[6] Id.
[7] State ex rel. Lee v. Montgomery, 88 Ohio St.3d 233, 236,2000-Ohio-316, 724 N.E.2d 1148.
[8] Id.
[9] Id., citing Kingdom v. Saxbe (P.C.1958), 9 O.O.2d 137, 138, 161 N.E.2d 461.
[10] See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
[11] CE. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[12] See G.C. 4160; Bates Section 1536-479; R.S. Section 2157; Act of May 7, 1869, Section 362.
[13] See, e.g., King v. Shelby (1931), 40 Ohio App. 195, 178 N.E. 22
(G.C. 4160 authorized township trustees to deed cemetery property to a city where the property lay within the city's corporate limits).
[14] (1996), 117 Ohio App.3d 152, 690 N.E.2d 49.